### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| MALLINCKRODT ARD, INC., et al., | : | No. 21-114 |
| Defendants. | : | |

### MEMORANDUM

**Schiller, J.**                                                                                                                       **March 10, 2021**

This lawsuit is one of numerous cases filed throughout the country involving Mallinckrodt's Acthar medication. In this particular case, Plaintiff claims that Defendants engaged in a scheme to raise the price of Acthar, couching all of their claims as violations of state law and filing this lawsuit in the Montgomery County Court of Common Pleas. Towards the end of 2020, years after this case began, Mallinckrodt filed for bankruptcy. Shortly thereafter, Mallinckrodt filed a notice of removal arguing that its bankruptcy filing brings this litigation within this Court's subject matter jurisdiction. Mallinckrodt seeks to transfer this matter to the District of Delaware so that the Bankruptcy Court can address Plaintiff's claims. Plaintiff wants the Court to remand the case back to state court. The Court will transfer this case to the District of Delaware with the expectation that the case will be sent to the Bankruptcy Court in that District. The Bankruptcy Court should decide whether Plaintiff's claims will remain before it or will be remanded to state court. Therefore, the Court will deny without prejudice the motion to remand and will grant the motion to transfer to allow the Bankruptcy Court to determine how best to proceed.

I.     **BACKGROUND**

This litigation commenced in the Montgomery County Court of Common Pleas on May 25, 2018.[1] The gist of this case, as stated in the notice of removal, is that Defendants allegedly engaged in an unlawful scheme to raise the price of Mallinckrodt's pharmaceutical product, Acthar Gel. In addition to Mallinckrodt, the lawsuit names Express Scripts Holding Co., Express Scripts, Inc. CuraScript, Inc. d/b/a CuraScript SP Specialty Pharmacy, Priority Healthcare Distribution, Inc. d/b/a CuraScript SD Specialty Distribution, Accredo Health Group, Inc., and United BioSource LLL f/k/a United BioSource Corp. (collectively, the "Express Scripts Entities" and together with Mallinckrodt, "Defendants").

Mallinckrodt makes, markets, distributes, and sells Acthar, the only therapeutic adrenocorticotropic hormone product sold in the United States. (Mallinckrodt Defs.' Notice of Removal Ex. 1a [Compl.] ¶ 2.) Acthar is a "specialty pharmaceutical," which means that it is distributed only though "specialty pharmacy distributors" ("SPD") and "specialty pharmacy providers." (*Id*. ¶ 6.) One of the largest SPD is Defendant Express Scripts, Inc.'s CuraScript, which is also a defendant. (*Id*. ¶¶ 7, 28.)

The International Union of Operating Engineers Local 542 represents heavy equipment operators in the building and construction industry. (*Id*. ¶ 19.) It provides health and welfare benefits to its members and their families. (*Id*. ¶ 18.) Three of those members use Acthar to treat medical conditions. (*Id*. ¶ 20.) Those members received their Acthar from Express Scripts; Plaintiff pays the health care benefits of its members and paid for the Acthar for those three members. (*Id*.)

---

[1] An amended complaint was filed on August 27, 2018, though it did not substantively change the factual allegations from the original complaint.

2

The Court will briefly describe the history of Acthar's development, distribution, and pricing as outlined in the Complaint. Acthar was approved by the FDA in 1952, and it is currently approved to treat nineteen different conditions. (*Id.* ¶ 41.) Although Acthar previously enjoyed a broad distribution network, Mallinckrodt significantly restricted that network in 2007 to just Express Scripts, the agent of Mallinckrodt's largest customers. (*Id.* ¶¶ 24, 30 ("CuraScript is Mallinckrodt's exclusive SPD for Acthar."); *see also id.* 48-49.) "All aspects of Acthar distribution were handled by Express Scripts." (*Id.* ¶ 49.) Mallinckrodt manages this exclusive arrangement with Express Scripts through the Acthar Support and Access Program. (*Id.* ¶ 51.) The Acthar Support and Access Program is operated by Defendant United BioSource Corporation ("UBC"), which manages Express Scripts's exclusive distribution, sales, and reimbursement of Acthar. (*Id.* ¶ 35.) "In effect, Mallinckrodt contracted with the agent of its leading customers, and the largest SPD at the time, in order to create an exclusive arrangement whereby both companies would share the financial rewards of the Acthar monopoly through exorbitantly higher prices." (*Id.* ¶ 8.) After Mallinckrodt and Express Scripts agreed to this exclusive arrangement, the two companies agreed to significantly raise the price of Acthar. This agreement forced Plaintiff to pay much higher prices for Acthar. (*Id.* ¶ 10.) For example, three members of Plaintiff had a serious medical condition for which Acthar was indicated as a treatment option. (*Id.* ¶ 20.) These members received Acthar from Express Scripts. (*Id.*) Plaintiff paid $153,775.95 directly to Express Scripts for its members' Acthar. (*Id.* ¶ 22.) This money was then transferred to Mallinckrodt, after Express Scripts deducted its share of the revenues. (*Id.*)

According to the Complaint, "[o]nce the patient (or their physician) contacts Mallinckrodt for a prescription of Acthar, they are directed to UBC. UBC then serves as the self-described 'hub' for Mallinckrodt and Express Scripts' exclusive arrangement. It confirms the patient's insurance

coverage or other source of payment, and then arranges for Acthar to be delivered directly to the patient by CuraScript." (*Id*. ¶¶ 52, 61.) As the Complaint phrases it, CuraScript acts as a delivery service for specialty prescription drugs. (*Id*. ¶ 62.) Plaintiff also coordinates with Defendant Accredo, another SPD, to get Acthar to its members. (*Id*. ¶ 68.) "In reality, however, the use of Accredo only insured that [Plaintiff] would pay the inflated prices for Acthar that Express Scripts agreed with Mallinckrodt to charge." (*Id*. ¶ 66.) When a doctor submitted a prescription to the Acthar Support and Access Program using the Acthar Start Form, which was used to coordinate reimbursement and to direct the prescription to Accredo, the Program would deal with Plaintiff's members. (*Id*. ¶ 68.) The member has insurance coverage through a health plan, which has a contract with Express Scripts to provide Plaintiff's members with pharmacy benefit management services and which requires Express Scripts to collect payment for the price of Acthar as a specialty drug. (*Id*. ¶¶ 71, 78.) Plaintiff charges that Mallinckrodt has used its monopoly power to limit the distribution of a specialty drug to one SPD, CuraScript, and used CuraScript's agents to coordinate all aspects of the distribution and sales of Acthar. (*Id*. ¶ 74.) "This allowed Mallinckrodt to raise its prices tenfold initially, and nearly double in the ensuing years, without any pushback from Express Scripts." (*Id*.) Express Scripts serves as Plaintiff's exclusive specialty pharmacy provider and distributor, in an effort to contain costs. (*Id*. ¶¶ 79-80.) Express Scripts failed to disclose to Plaintiff its exclusive relationship with Mallinckrodt. (*Id*. ¶ 81.) It failed to act to lower costs despite regularly touting its ability to do so. (*Id*. ¶¶ 102-04.)

When Mallinckrodt acquired the rights to Acthar in 2001, the end-payor price of a vial was $40. (*Id*. ¶ 92.) After it acquired the rights to Acthar, the price per vial rose to $748. (*Id*.) From 2001 until Mallinckrodt executed its new strategy in 2007, the end-payor price was $1980. (*Id*.) When it implemented its new strategy in August of 2007, the price skyrocketed to $27,922.80 per

vial, a 69,707% increase from the time Mallinckrodt acquired Acthar. (*Id*. ¶ 93.) By 2012, the end payor paid $34,150 per vial and by 2017, Acthar cost $43,658.40 per vial. (*Id*. ¶¶ 94-95.) Express Scripts did not push back on these price increases because of the money it was making from its exclusive arrangement with Mallinckrodt. (*Id*. ¶¶ 97, 99.)

On January 18, 2017, the Federal Trade Commission sued Mallinckrodt, alleging that it exercised monopoly power in the United States over the sale of Acthar. (*Id*. ¶ 114.) This litigation was filed approximately a year and half later. Plaintiff includes claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, negligent misrepresentation, aiding and abetting, unjust enrichment, breach of contract, and promissory estoppel. According to the Complaint, "[n]o aspect of the claims asserted in this Complaint is brought pursuant to any federal law, including, but not limited to, RICO, the Sherman Act, or the Clayton Act, and thus no federal question is raised by any of Plaintiff's claims asserted." (*Id*. ¶ 12.)

On October 12, 2020, Mallinckrodt filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware. (Mallinckrodt Defs.' Notice of Removal ¶ 5.) This triggered an automatic stay of litigation against the debtor, Mallinckrodt. On November 23, 2020, the Bankruptcy Court addressed a supplemental motion to extend the automatic stay to certain non-debtor entities who are co-defendants with Mallinckrodt, including the Express Scripts Entities, for a period of 270 days. (Mallinckrodt Defs.' Notice of Removal Ex. 7 [Nov. 23, 2020 Hr'g Tr.].) Plaintiff objected to the motion, but the objection was overruled. (*Id*. at 44.) The Bankruptcy Court entered a 270-day injunction staying a number of lawsuits against non-debtor parties, including this litigation involving the Express Scripts Entities. The Bankruptcy Court explained that it had jurisdiction over Plaintiff's claims against the Express Scripts Entities pursuant to 28 U.S.C. § 1334(b) because the claims were "related to" the Mallinckrodt bankruptcy.

(*Id*. at 44-45.) It determined that "related to" jurisdiction exists because the cases "could alter the debtors' rights, liabilities, options, or freedom of action, either positively or negatively, and . . . impact[] . . . the handling and administration of the bankruptcy estate." (*Id*.) The Bankruptcy Court relied upon several factors to reach this conclusion.

First, the possibility of indemnity claims asserted against debtors warranted extending the stay. (*Id*. at 45.) Although Plaintiff argued that the potential indemnification claims were not legally valid, the Bankruptcy Court decided "prudence dictates that the debtor treat its indemnity obligations as very real and substantial," regardless of the ultimate merit of the indemnification claims. (*Id*. at 46 ("It is not for this Court to make an ultimate ruling on the question of whether [Express Scripts, Inc.'s] indemnity claims will be successful. The question is only whether potential indemnity claims exist.").) Second, discovery demands placed upon the debtors could affect the bankruptcy estate. (*Id*. at 46-47.) Third, "there is a risk of collateral estoppel and record taint if the actions are allowed to proceed." (*Id*. at 45.) Fourth, the Express Scripts Entities could damage the debtors' business based on the Express Scripts Entities' defense of the litigation. (*Id*. at 46-47.) Fifth, the debtors' reorganization could be disrupted by causing other parties to walk away from certain agreements with the debtors, including a restructuring supports agreement ("RSA"). (*Id*.) Although the indemnity claims provided a sufficient basis to assert "related to" jurisdiction, the Acthar allegations demonstrated that the claims against the debtors and nondebtors were "inextricably intertwined, creating a risk of collateral estoppel and record taint that would require the debtors to participate in the litigation in order to protect their interests." (*Id* at 47.) Finally, the Bankruptcy Court noted that Plaintiff's discovery requests of Mallinckrodt's officers and directors could adversely impact the bankruptcy estate and therefore established jurisdiction.

Defendants' notice of removal, filed on January 8, 2021, asserts that this Court has subject matter jurisdiction under 28 U.S.C. §§1334(b) and 1452(a) because the state court litigation is "related to" Mallinckrodt's bankruptcy case. (Mallinckrodt Defs.' Notice of Removal ¶ 13.)

## II.    DISCUSSION

Bankruptcy judges may hear and determine all "core proceedings" arising under Title 11 that are referred to the bankruptcy judge. *See* 28 U.S.C. § 157(b). Mallinckrodt's removal notice asserts that Plaintiff's claims against it qualify as a core proceeding under 28 U.S.C. § 157(b) because "this is an action against Mallinckrodt and it is contingent or dependent upon claims against Mallinckrodt." (*Id*. ¶ 17.) According to Defendants, this Court has "arising in," "arising under," and "related to" jurisdiction over the claims against Mallinckrodt and has "related to" jurisdiction over Plaintiff's claims against the Express Scripts Entities in the state court action. (*Id*. ¶¶ 18-19.) Plaintiff's motion to remand contends that this Court lacks jurisdiction over this litigation. Rather, Plaintiff argues, "[t]he instant Notice of Removal is just another delay and forum-shopping tactic employed by Defendants to avoid having to face a jury in this case." (Pl.'s Mem. of Law in Supp. of Mot. to Remand [Pl.'s Mem.] at 5.) "[T]hey hope to pass this case through this Court on the way to their perceived more favorable forum in the District of Delaware." (*Id*. at 5-6.) The Court here must address whether: (1) Mallinckrodt could remove this case in the first place; (2) this Court has subject matter jurisdiction; and (3) this Court or the Bankruptcy Court should adjudicate Plaintiff's to remand.

### A.    Could Defendants Remove This Case Despite the Automatic Stay?

Preliminarily, the Court will address whether the automatic stay precludes removal here. The Court concludes that it does not.

The law provides for an automatic stay of litigation against a debtor upon a bankruptcy filing. 11 U.S.C. § 362. The stay covers the "commencement or continuation, including the issuance or employment of process," of judicial proceedings against the debtor that "was or could have been commenced before the commencement of the case [under Title 11]." 11 U.S.C. § 362(a)(1). As noted previously, the Bankruptcy Court extended the stay to non-debtor defendants, including the Express Scripts Entities here, for a period of 270 days. Plaintiffs assert that removal is a "direct, willful violation" of the Bankruptcy Court's order. (Pl.'s Mem.] at 3; *see also id*. at 15 ("Hence, their removal plainly violates the stay and an injunction, warranting remand.").) According to Plaintiff, Defendants are attempting to circumvent the very stay they argued for by removing this case. (Pl.'s Mem. at 3, 7.)

The weight of authority permits a case to be removed and remanded despite the automatic stay. *See J.R. v. Allegheny Highlands Council, Inc., Boy Scouts of Am.*, Civ. A. No. 20-215, 2020 WL 7398754, at *2 (W.D.N.Y. Dec. 17, 2020); *Worldview Ent'mt Holdings, Inc. v. Woodrow*, 611 B.R. 10, 15 (S.D.N.Y. 2019) ("However, more persuasive is the view that an automatic stay pursuant to Section 362 does not prevent a party from removing a case to federal court or a federal court from adjudicating a motion to remand."); *In re Cashco, Inc.*, 599 B.R. 138, 147 (Bankr. N.M. 2019) ("Thus, removal itself is not subject to the automatic stay . . . Nor does the automatic stay apply to remand or abstention."). Because the removal of a case to federal court does not advance the state court litigation, removal is not considered a "commencement or continuation" of judicial proceedings. *Woodrow*, 611 B.R. at 15. Therefore, the automatic stay does not bar a federal court from addressing a motion to remand. *See id*. ("[A]ny actions by this [c]ourt to exercise its power of remand or abstention do not fall within the scope of the stay because those actions . . . would simply 'restore[] the action to the status quo as it existed upon commencement of the bankruptcy

8

case prior to removal.'") (quoting *Cashco*, 599 B.R. at 147). The Court agrees with the weight of authority here. The stay issued by the Bankruptcy Court does not foreclose removal, though the Court still must address whether it has subject matter jurisdiction and which court should address the motion to remand.

**B.     Does this Court Have Subject Matter Jurisdiction Over This Case?**

Having determined that the stay does not preclude removal, the Court turns to whether it has jurisdiction over this litigation. The Court is persuaded that the Bankruptcy Court correctly addressed this issue.

Plaintiff claims that this matter was improperly removed. Plaintiff notes that there is no diversity of citizenship between the parties here and there is no federal question presented. (Pl.'s Mem. at 7.) Indeed, for over two years this case remained in state court. It was Mallinckrodt's bankruptcy filing that first arguably turned this into a federal case. Unsurprisingly, Plaintiff takes issue with the jurisdictional decision of the Bankruptcy Court. For one, Plaintiff notes that it has appealed the decision of the Bankruptcy Court that "related to" jurisdiction exists. (Pl.'s Mem. at 6 ("Mallinckrodt fails to advise this Court that the bankruptcy court's ruling on the injunction, and erroneous findings about the 'relatedness' of Local 452's claims against Express Scripts to the bankruptcy, are presently on appeal in the District of Delaware.").)

Plaintiff also believes that Mallinckrodt has overstated the Bankruptcy Court's ruling on the jurisdictional issue. According to Plaintiff, while the "Bankruptcy Court *may* have had jurisdiction sufficient to issue an injunction . . . it has never claimed jurisdiction over claims made against Express Scripts." (Pl.'s Opp'n to Mallinckrodt's Mot. to Transfer This Stayed and Enjoined Case [Pl.'s Transfer Opp'n] at 19-20.) Further, Plaintiff argues, this Court need not concur with the Bankruptcy Court's decision that the claims against Mallinckrodt and the Express Scripts

9

Entities are "inextricably intertwined." (*Id*. at 20.) Finally, Plaintiff asserts, the Bankruptcy Court incorrectly addressed the indemnification issue. (Pl.'s Mem. at 11-15; *see also* Pl.'s Transfer Opp'n at 12-13 ("Neither Express Scripts, nor any of its entities, have not [*sic*] asserted any rights to indemnity in the underlying action. And Express Scripts assertion of a right to indemnity is predicated on agreements not with Express Scripts itself, as the corporate parent, but rather, with subsidiaries of Express Scripts."); *see also id* at 16-19.) According to Plaintiff, Express Scripts has not advanced its indemnity claim in any court and "Mallinckrodt has not sought to advance its mutual right of indemnity. Thus, there is no unity of interest regarding indemnity" (Pl.'s Mem. at 15.)

This Court agrees with the analysis of the Bankruptcy Court that subject matter jurisdiction exists because Plaintiff's claims are "related to" the Mallinckrodt bankruptcy. The law provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Pursuant to section 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The burden of establishing jurisdiction falls upon Mallinckrodt as the removing party. *See The CIT Grp./Equip. Fin., Inc. v. BDO Seidman, LLP*, Civ. A. No. 09-431, 2009 WL 2171231, at *2 (W.D. Pa. July 21, 2009).

This Court's "related to" jurisdiction is not limitless, but it covers "more than simple proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). The test "for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being*

*administered in bankruptcy.*" *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). If the action "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and in any way impacts the handling and administration of the bankrupt estate, it is related to the bankruptcy. *Id*.

When the issue of indemnification arises, "[o]nly when the right to indemnification is clearly established and has accrued upon the filing of a civil action is the proceeding deemed 'related to' the bankruptcy case." *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013). If, however, the right to indemnification necessitates a factual finding in an action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish a right to indemnification, "related to" jurisdiction does not exist. *Kleiner v. Rite Aid Corp.*, 604 B.R. 1, 6 (E.D. Pa. 2019). A potential indemnification claim under common law is insufficient to establish subject matter jurisdiction because the case is "related to" a bankruptcy. *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009).

Mindful of this framework, the Court agrees with the conclusion of the Bankruptcy Court, even if the indemnification issue is removed from the equation. Plaintiff sued Mallinckrodt and the Express Scripts Entities based on a theory that the companies were engaged in a scheme to keep Acthar's prices exorbitantly high. To further that scheme, Mallinckrodt used the Express Script Entities as the exclusive distributor of the drug. The Bankruptcy Court's determination that the claims against Defendants are "inextricably intertwined" is not only reasonable, but this Court also believes that determination is inevitable. How is the Plaintiff to proceed through discovery and trial against only the distributor? Mallinckrodt, as the maker and seller of the drug, is integral to Plaintiff's claims and clearly could have its rights, liabilities, options, or freedom of action significantly impacted by this litigation. Mallinckrodt is the star of this play and thus this Court

11

has "related to" jurisdiction over the other actors. Because this Court believes that this lawsuit could affect the handling and administration of the bankruptcy estate and can readily alter Mallinckrodt's rights or liabilities without the intervention of another lawsuit, a finding of "related to" jurisdiction is proper here. *See In re Federal-Mogul, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 232 (3d Cir. 2004).

### C. Which Court Should Address the Remand Issue?

Defendants properly removed this case, and this Court has subject matter jurisdiction. The Court still must determine how best to decide Plaintiff's motion to remand. Plaintiff argues that this Court either must or should abstain from asserting subject matter jurisdiction and should send this case back to the state court for adjudication following the expiration of the stay. Mallinckrodt seeks to transfer this litigation to the District of Delaware, where the Bankruptcy Court can decide this litigation. In the alternative, Mallinckrodt requests that this Court "transfer this Action to the Bankruptcy Court to rule on the remaining issues." (Mallinckrodt's Mem. of Law in Opp'n to Mot. to Remand at 24.) The Court concludes that this third alternative is the best course of action.

Plaintiff argues in favor of both mandatory and permissive abstention. There are three statutes in play when deciding this issue. First, "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). This section requires abstention. Second, "[n]othing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law from

12

abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). This section permits, but does not require, abstention. Finally, equitable remand affords district courts the discretion to send cases back to state court. *See* 28 U.S.C. § 1452(b) ("The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.")

Although Plaintiff presents some strong arguments supporting abstention and remand, "[c]onsistent with the weight of authority in our Circuit, and absent jurisdictional issues regarding the bankruptcy court's ability to hear [the Acthar litigation], we instead transfer this matter to [the Bankruptcy Court] for [a] decision on abstention." *See Harrell v. Carrington Mortg. Servs., LLC*, Civ. A. No. 20-2359, 2020 WL 3412546, at *8 (E.D. Pa. June 22, 2020). As has been recently affirmed by another court in this District, if a court is simultaneously confronted with a motion to transfer or change the venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a), and a motion to remand or otherwise abstain from hearing the change of venue action, pursuant to 28 U.S.C. § 1334(c), "the action should be transferred to the 'home' court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action." *Id*. at *5 (E.D. Pa. June 22, 2020) (quoting *Hohl v. Bastian*, 279 B.R. 165, 167 (W.D. Pa. 2002)). That is precisely the situation with which this Court is faced.

This Court has already outlined its agreement with the Bankruptcy Court's decision that there is "related to" jurisdiction over Plaintiff's claims against the Express Scripts Entities in the Acthar litigation. Thus, this Court must decide which court should decide the abstention and remand issue. Given the circumstances of this litigation, the Court concludes that transfer to the District of Delaware to adjudicate the abstention and remand issue is appropriate.

The Bankruptcy Court is in the best position to ultimately determine whether remand is appropriate. There is a preference for transferring the case to the "home court" because that court "is in the best position to evaluate the claims and determine whether remand is appropriate." *George Junior Republic in Pa. v. Williams*, Civ. A. No. 07-4537, 2008 WL 763304, at *5 (E.D. Pa. Mar. 19, 2008). "In sum, the home court presumption provides that the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts." *Hohl*, 279 B.R. at 177.

This home court preference is particularly strong when the court to which the case was removed has no interest in the proceedings but is the court to which the removal law required the case to be removed. *Williams*, 2008 WL 763304, at *5. That is precisely what has happened here; nobody actually wants this case to remain in this Court. Plaintiff wants to go back to state court and Defendants want the Bankruptcy Court to handle this matter. Therefore, this Court—which is acting as a rest stop on the litigation turnpike—should not decide these important questions. *See Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, Civ. A. No. 18-1144, 2018 WL 6977710, at *1 (M.D. Pa. Dec. 10, 2018) (recommending that litigation that all parties agreed should not remain with the court acting as "legal waystation" be transferred to federal court presiding over bankruptcy litigation so that motion to remand could be addressed by bankruptcy court); *report and recommendation adopted*, 2019 WL 123896 (M.D. Pa. Jan. 7, 2019). In situations like this, courts generally decide the transfer issue before the remand issue. *See id*. at 3.

### D. Should This Case Be Transferred?

This "home court" presumption is not a slam dunk for Defendants, but it heavily tips the ball to the Bankruptcy Court. But the Court will next address the other factors that arise in deciding whether a transfer is appropriate here.

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Courts have broadly interpreted the language "under title 11" to include cases "related to" bankruptcy proceedings. *Harrell*, 2020 WL 3412546, at *10. The "interest of justice" prong of section 1412 is "broad and flexible" and "applied on a case-by-case basis." *Perno v. Chrysler Grp. LLC*, Civ. A. No. 10-5100, 2011 WL 868899, at *4 (D. N.J. Mar. 10, 2011). When deciding whether it is "in the interest of justice" to transfer a bankruptcy-related case, courts consider: (1) the economics of estate administration; (2) a presumption in favor of the home court; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment; (7) plaintiff's choice of forum."[2] *Garcia v. Chrysler Grp. LLC*, Civ. A. No. 12-1797, 2015 WL 12857080, at *3 (D.N.J. Mar. 9, 2015).

The first factor, the economics of estate administration, weighs in favor of transfer because of the potential of this litigation to affect the bankruptcy estate. The second factor, the presumption in favor of the home court where the bankruptcy was commenced, weighs heavily in favor of transfer. Normally, in a case related to a bankruptcy proceeding, "the district where the bankruptcy is pending is generally the appropriate venue." *Clark v. Chrysler Grp., LLC*, Civ. A. No. 10-3030, 2010 WL 4486927, at *9 (E.D. Pa. Nov. 5, 2010); *see also Waleski*, 2018 WL 6977710, at *4 ("[W]hen a civil case is filed that is related to a bankruptcy proceeding venued elsewhere, the case should be litigated in the district where the bankruptcy was filed."). Transfer to the district where the bankruptcy is pending generally promotes judicial economy, which is the third factor, and

---

[2] This list is non-exhaustive. Additionally, some courts have applied the familiar *Jumara* factors to adjudicate a motion to transfer under the bankruptcy statutes. *See, e.g.*, *Harrell*, 2020 WL 3412546, at *10-11.

15

avoids inconsistency. *Waleski*, 2018 WL 6977710, at *4; *see also Shared Network Users Grp. v. WorldCom Techs., Inc.*, 309 B.R. 446, 452 (E.D. Pa. Apr. 19, 2004) ("Here, we find the overwhelmingly significant factor, outweighing all others, is the judicial economy to be achieved in having the entire controversy decided in one forum."). The Court is not aware of any issues that would render a judgment unenforceable following a transfer, which renders the sixth factor a nonissue here.

Plaintiff is concerned that if this case is transferred, it will not receive a jury trial, although it demanded one in state court. Moreover, Plaintiff's choice of forum is obviously the Montgomery County Court of Common Pleas. But the Court places less value on these factors here. This Court is transferring this litigation so the Bankruptcy Court can determine whether Plaintiff's case should be remanded. Therefore, it is entirely possible that this case ends up back in state court, which would respect Plaintiff's original choice of forum and ensure that Plaintiff's case is tried before a jury. Even if the case remains with the Bankruptcy Court, it is possible that Plaintiff's case will be tried before a jury. *See In re Brownsville Prop. Corp., Inc.*, 469 B.R. 216, 225 (Bankr. W.D. Pa. 2012) (noting that bankruptcy courts may conduct jury trials for some matters and may "always hear matters through the pretrial state, subject to the case then being tried in District Court in front of a jury if necessary"); *see also In re Carriage House Condos. L.P.*, 415 B.R. 133, 148 (Bankr. E.D. Pa. 2009) ("[T]his Court could hear the matter through the pretrial stages, subject to it then being tried by the District Court in front of a jury. This is not an uncommon occurrence. In short, the Court does not find . . . [the] jury trial demand to dictate remand of the case.").

The Court concludes that a transfer is warranted so that the Bankruptcy Court can address the remand issue. Although district courts have directly transferred cases to bankruptcy courts using § 1412, the language of the statute directs that a district court may transfer a case "to a district

court for another district." 28 U.S.C. § 1412; *see also Harrell*, 2020 WL 3412546, at *10 ("Although the statutory language of section 1412 speaks of transferring to a district court, courts have applied this section to effect transfer of cases directly from a district court to a bankruptcy court." *Harrell*, 2020 WL 3412546, at *10 (citing *Clark v. Chrysler Grp., LLC*, Civ. A. No. 10-3030, 2010 WL 4486927 (E.D. Pa. Nov. 5, 2010)). Nevertheless, this Court will follow the letter of the transfer statute, and transfer this matter to the District of Delaware so that it can be handled in the district overseeing Mallinckrodt's bankruptcy. *See Res. Club, Ltd. v. Designer License Holding Co.*, Civ. A. No. 10-412, 2010 WL 2035830, at *4 (D. N.J. May 21, 2010) (transferring case to district court pursuant to § 1412, "which presumably will then transfer the proceeding to bankruptcy court").

### III.  CONCLUSION

The Court concludes that this matter was properly removed, but that the relevant legal considerations overwhelmingly support having the Bankruptcy Court, which is in the best position to determine how litigation of this matter will affect the bankruptcy estate, decide the remand motion. Therefore, the Court will transfer this case to the District of Delaware so that the Bankruptcy Court can decide that matter. An Order consistent with this Memorandum will be docketed separately.